## HICKMAN WILLIS v. STATE.

No. A-2425.   Opinion Filed September 23, 1916.

(159 Pac. 1014.)

HOMICIDE—Appeal—Reversal. A person who is convicted of manslaughter cannot secure a reversal in this court, in the absence of errors of law, when the proof shows that the jury should have found a verdict for murder.

*Appeal from the District Court of Carter County.*
*A. Eddleman, Judge.*

Hickman Willis was convicted of manslaughter, and appeals. Affirmed.

*Brown, Brown & Brown,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for defendant in error.

ARMSTRONG, J. The plaintiff in error, Hickman Willis, was convicted of manslaughter in the first degree at the September, 1914, term of the district court of Carter county, and his punishment fixed at confinement for twenty-five years in the state penitentiary. It appears that Hickman Willis, the plaintiff in error, and the deceased, Rena Davis, were full blooded Choc-

taws, belonging to the class commonly designated Mississippi Choctaws. They lived in the same community in Carter county and something like three quarters of a mile apart. Rena Davis was more than seventy years of age. Hickman Willis was a comparatively young man. The killing occurred on the 12th of August, 1914. Upon this date, Hickman Willis and other Choctaws were in Ardmore where they secured whisky. Willis, it is contended, became intoxicated before leaving Ardmore, and drank some on the way home after leaving the city. Arriving home, he assisted in unharnessing the team and putting away certain paraphernalia which had been used on a hunting trip. One or two other Choctaws, among them Robert Lee, were with him. When the team was unharnessed, Lee, who, it appears, lived with Rena Davis, left the home of Willis going in the direction of his own home. Before going a great ways he and a companion discovered that Willis and following them with a shotgun. They hastened their steps in order to avoid him. Soon after arriving home, Willis appeared on the scene and began shooting into the house, wounding a number of the inmates—some three or four, and killing Rena Davis. All of the able-bodied persons in the house at the time, who were not seriously wounded, escaped and left the premises. Willis was found in his own home about midnight by the sheriff of the county, and arrested. He denied any knowledge of the killing, his plea being based upon the contention that he was insanely drunk, and remembered nothing whatever about the affair. Proof was also offered to the effect that Willis had received a severe injury to the head several years before, and a part of the frontal bone had been removed; that on account of this injury the intoxicating drinks affected him to the extent of dethroning his reason. The court permitted all the proof offered by the plaintiff in error along these lines, and submitted the same to the jury fairly and with much consideration for the rights of the plaintiff in error. We have read the record fully, and have given careful consideration to the written argument of counsel. There is no error disclosed prejudicial to the rights of the plaintiff in error. In fact, the only error disclosed

is error committed in his favor. The homicide was a most brutal murder committed by a drunken full blood whose victim was a law abiding, harmless, old full blood woman. There is not an extenuating circumstance or fact in evidence. There was absolutely no defense disclosed under the testimony. The jury before whom the case was tried, evidently extended clemency to the accused on account of his intoxicated condition. A conviction for murder would have been proper in this case. The plaintiff in error and his counsel are to be. congratulated that they secured from the jury a verdict of manslaughter rather than of murder, for the facts disclosed would have fully supported a conviction for the higher offense.

No prejudicial error appearing, the judgment of the trial court is affirmed.

DOYLE, P. J., and BRETT, J., concur.